268 F.2d 352
 INTERNATIONAL UNION OF ELECTRICAL, RADIO AND MACHINE WORKERS
(AFL-CIO), an Unincorporated Association,
v.
WESTINGHOUSE ELECTRIC CORPORATION, a Pennsylvania
Corporation, Appellant.
 No. 12833.
 United States Court of Appeals Third Circuit.
 Argued May 8, 1959
Decided June 30, 1959.
 
 John G. Wayman, Pittsburgh, Pa. (Leonard L. Scheinholtz, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., on the brief), for appellant.
 Benjamin C. Sigal, Washington, D.C. (J. Alfred Wilner, Wilner, Wilner & Kuhn, Pittsburgh, Pa., on the brief), for appellee.
 Before McLAUGHLIN, KALODNER and STALEY, Circuit Judges.
 McLAUGHLIN, Circuit Judge.
 
 
 1
 Employer appellant and the union bargaining agent being in dispute regarding the arbitrability of two grievances, the union sued in the district court under Section 301 of the Labor Management Relations Act of 1947, 29 U.S.C.A. 185, in accordance with the rule of Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.
 
 
 2
 From the stipulated facts it appears that the modified collective bargaining agreement in effect between the parties contains a detailed grievance procedure for the settlement of disputes and for the arbitration of certain types of grievances which remain unsettled after the grievance procedure has been exhausted. Not every matter is arbitrable without the consent of both sides and there are express limitations on the authority of the arbitrator. Where there is disagreement as to the arbitrability of any grievance this issue must be determined 'By the Court before the matter can proceed to arbitration.'
 
 
 3
 The first grievance was filed September 10, 1956. It basically concerns time value, which is the amount of time, expressed in decimal hours, in which an employee can produce a unit free from defects. It serves as a wage factor element when the incentive system is in effect. To arrive at such a worker's pay, the number of units he produces in any given period is multiplied by the time value for the particular unit to determine the multiplier to be used on that portion of the rate used in incentive earnings-- the base rate. That multiplied base rate plus the non-incentive portion of the guaranteed rate or adders (i.e. general increases and cost of living allowances which are not applied to incentive earnings) gives the employee's pay for that period. Time value for an operation can be arrived at by various methods, including time study, from formula or data, by comparison, or by estimate.
 
 
 4
 The manufactured article here concerning us is Style Y-53921, a tie bar for a water cooler which is manufactured on a piece of equipment known as a 'press brake' using universal dies, a machine designed to perform the same operations (bending, notching or piercing) on raw material of varying lengths, widths, or thicknesses. Style Y-22070 is a part manufactured on the same machine, but is of different size than Style Y-53921 in that its width is a 2 7/32' whereas, the width of the Style Y-53921 is 1 23/32'. When the company began producing Style Y-53921, it established a time value for this part by estimate. At that time, there was in existence a recorded time value for Style Y-22070, established by the formula method, which was .0015 higher than the new time value established for Style Y-53921.
 
 
 5
 In the grievance meetings the union contended that the recorded time value established by the formula method was intended to apply to parts of varying size including the size of Style Y-53921 and that employer should have applied the existing recorded time value for Style Y-22070 to the manufacture of Style Y-53921 instead of establishing a new time value for this operation, even though the two parts were of different width. Westinghouse maintained that the recorded time value for Style Y-22070 applied only to that part, that a number of other time values established by time studies existed for other parts of different size manufactured on the same equipment, and that Style Y-53921 was a new operation for which it had a right to establish a new time value.
 
 
 6
 The company denied the grievance and refused to process it through arbitration.
 
 
 7
 Time value is also involved in the second grievance which deals with the building of C. S. Rotor cores at the employer's East Pittsburgh plant. Prior to May, 1955, this consisted of three stages-- build, press and drift slots. The time allowance for the total process was indicated in the one time value. By May, 1955 manufacturing techniques had so improved that the drifting operation was discontinued. The employer because of that removed from the time allowance the amount it contended it had previously given for the drifting.
 
 
 8
 The union asserted at the grievance hearings, as it does in this suit, that Westinghouse had taken away too much time for drifting and insisted that a time study should have been taken to determine the proper amount. Westinghouse stood by its reduction as called for but offered 'to take a time study to determine whether the adjusted time value for the remaining operation was adequate.' The union refused this, stating 'that no specific time allowance had been established for the drift slots portion of the total operation.'
 
 
 9
 Arbitration on this grievance was also refused by the employer.
 
 
 10
 The true issue before us on both these grievances is clearly within Section XIV-A (the Arbitration Section), of the agreement. This provides that '* * * any grievance involving action taken or failure to act * * * which remains unsettled after the grievance procedure has been exhausted * * * and which involves either: (1) the interpretation, application or claimed violation of a provision of this Agreement * * * shall be submitted to arbitration * * *.'
 
 
 11
 In the first grievance it is the union's position that in Style Y-22070, Westinghouse had an existing time value with which to gauge its then new Style Y-53921. The union, as we have mentioned, stresses that both styles are made on the same machine from the same sort of raw material, their sole difference being in width. The employer's view is that it is a new operation and rates a new time value.
 
 
 12
 The question which would be presented to the arbitrator is simply whether under the facts, the employer is justified in installing a new value for its Style Y-53921 or in so doing was in violation of Section VIII, 8E of the Agreement which calls for use of the existing time value if there is one.
 
 
 13
 In the Rotor core grievance, the attitude of the parties is reversed but the difference between them is just as clearly within the Arbitration section of the contract. It is the union's claim that there never was an established time value of the drifting operation. Therefore, it argues, the employer had nothing valid to subtract from the total time value. Westinghouse denies this and states that it acted within Section VIII.
 
 
 14
 Once again the issue is the interpretation of the agreement which is directly authorized by Section XIV-A and whether or not the employer is in violation thereof.
 
 
 15
 Confusion has arisen with respect to the disposition of these grievances because the employer is fearful that their arbitration might disturb time values which would be contrary to the agreement. This fear is unwarranted. In both grievances the arbitrator's task would be to interpret the contract and determine from it under the facts whether there was an existing time value for the particular operation. If there was not in the first, the finding would be that Westinghouse was not in violation of the contract in fixing of new value. If there was, then Westinghouse would be in violation of Section XIII. In the second grievance, the arbitrator, again interpreting the contract and applying the Rotor facts, would reach his conclusion whether Westinghouse was within the agreement by its time value deduction for the eliminated drifting operation.
 
 
 16
 In reaching these conclusions the arbitrator would neither be establishing new time values or modifying the present ones. He would be merely declaring what the particular actual time value situations are by correct interpretation of the existing written collective bargaining agreement.
 
 
 17
 Both employer and employees are entitled to proceed with the utmost caution respecting any part of the agreement, especially where, as here, it touches on the wage filed. However, there is nothing directly or indirectly in this appeal which in any way departs from the letter and spirit of the collective bargaining agreement.
 
 
 18
 The judgment of the district court will be affirmed.