835 F.2d 1045
 127 L.R.R.M. (BNA) 2206, 56 USLW 2423,
108 Lab.Cas. P 10,275
 LODGE 802, INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON
SHIPBUILDERS, BLACKSMITHS, FORGERS AND HELPERS,
AFL-CIO, Appellants,
v.
PENNSYLVANIA SHIPBUILDING COMPANY.
 No. 87-1354.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit Rule 12(6),
 Dec. 14, 1987.
Decided Dec. 28, 1987.
 
 Joseph Lurie, Morris D. Bernstein, Galfand, Berger, Senesky, Lurie & March, Philadelphia, Pa., for appellants.
 J. Anthony Messina, James J. Sullivan, Jr., Pepper, Hamilton & Scheetz, Philadelphia, Pa., for appellee.
 Before SLOVITER and COWEN, Circuit Judges, and DEBEVOISE, District Judge.*
 OPINION OF THE COURT
 SLOVITER, Circuit Judge.
 
 
 1
 This case presents the unusual situation in which a union seeks to have an arbitrator fix the wage rates applicable to a line of work on which the parties have been unable to agree. Lodge 802 of the International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL-CIO ("Lodge 802" or "Union") brought this suit in district court seeking an order compelling the Pennsylvania Shipbuilding Company ("Company") to arbitrate the issues of pay and job classifications relative to the assignment of employees to load and unload manifested ships' cargo. Although we are mindful that "[a]rbitration is the preferred method for resolving disputes between a union and an employer," E.M. Diagnostic Systems, Inc. v. Local 169, 812 F.2d 91, 94 (3d Cir.1987), we agree with the district court that the collective bargaining agreement does not require arbitration of such an issue and therefore affirm the entry of summary judgment for the defendant.
 
 I.
 
 2
 The Company and Union signed a new collective bargaining agreement effective January 1, 1985 through January 6, 1989, which contains the following arbitration provisions:
 
 
 3
 1. (a) In the event any difference or dispute arise between the parties as to the meaning, application or interpretation of any of the terms or conditions of this Agreement that cannot be amicably settled, or should either party claim that the other has breached any of the terms or conditions of this Agreement, or should any grievance or dispute remain unsettled after exhausting the first three steps of the grievance procedure outlined in Article 27 hereof, then the dispute or question involved, except those specifically excluded in this agreement, shall be submitted for arbitration to an arbitrator to be mutually selected by the parties, as herein provided.
 
 
 4
 * * *
 
 
 5
 3. It is distinctly understood and agreed that the arbitrator shall not have power to alter or modify the terms and conditions of this Agreement.
 
 
 6
 App. at 51 (emphasis added).
 
 
 7
 Traditionally, the Company and its predecessor, Sun Shipbuilding Company, had been engaged primarily in shipbuilding and rebuilding. In early 1986, the Company sought to use Lodge 802 members to load and unload cargo being shipped between ports. The Union filed a grievance contending that the contract did not require its members to do such work. At the Union's request, the matter proceeded to arbitration. The arbitrator ruled that the Company may properly assign Local 802 members to load and unload cargo, but because this work involved "new duties and changes in working conditions", the arbitrator's award also stated that, "the Company shall negotiate in good faith, at the Union's request, concerning pay levels, job classifications, and other working conditions issues relevant to bargaining unit employees performing the on-loading and off-loading of manifested cargo." App. at 80.
 
 
 8
 The Union filed an action to compel negotiation and to compel arbitration thirty days thereafter if negotiations proved unsuccessful. The parties then met and bargained, but without reaching agreement. The Union requested, and the Company refused, arbitration of the dispute over pay rates and other conditions of employment. The Union then pressed its claim for arbitration in this action. The district court, having received a joint letter from counsel stating that trial was not necessary and that the case could be resolved through summary judgment, granted without further proceedings summary judgment for the Company on the basis of the stipulated factual record submitted to it. The Union appeals.
 
 II.
 
 9
 The Union relies on the general presumption in favor of arbitrability recognized by the Supreme Court in United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). There the Court stated that, "[d]oubts [on arbitrability of a grievance] should be resolved in favor of coverage." Id. at 583, 80 S.Ct. at 1353. Significantly, however, the Court in that same case also cautioned that, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id. at 582, 80 S.Ct. at 1353.
 
 
 10
 Here, the Union is clearly seeking "interest" arbitration as opposed to "rights" arbitration; the Union is asking the arbitrator to set new terms and conditions of employment that will govern the loading and unloading of ships. These terms are not provided for in the agreement. See F. Elkouri and E.A. Elkouri, How Arbitration Works (4th Ed.1985) 98-117 (discussing the distinction between "interest" arbitration and "rights" arbitration). Instead, the arbitration provisions of the collective bargaining agreement contemplate only "rights" arbitration; the arbitrator is to resolve disputes involving the interpretation or application of terms and conditions of employment that the parties have themselves agreed to in their contract.
 
 
 11
 Article 28 of the agreement provides for the arbitration of disputes "as to the meaning, application or interpretation of any terms or conditions of this Agreement" or where "either party claim[s] that the other has breached any of the terms or conditions of this Agreement." App. at 51. This language demonstrates that the role of arbitration is to interpret the existing agreement, not to create new terms and conditions not provided for in that agreement.[1] Moreover, the provision that "the arbitrator shall not have power to alter or modify the terms and conditions of this Agreement," App. at 51, suggests that the parties did not intend arbitration to cover new wage rates and job classifications.
 
 
 12
 The cases cited by the Union are inapposite. In Radio Corp. of America v. Association of Professional Engineering Personnel, 291 F.2d 105 (3d Cir.), cert. denied, 368 U.S. 898, 82 S.Ct. 174, 7 L.Ed.2d 93 (1961), this court, while finding that a dispute over the level of merit wage increases was arbitrable, noted that the arbitration it ordered would not be for the purpose of "changing an existing wage rate or establishing a new one" but would only "enforce a contractual scheme of [wage] escalation." Id. at 109. See also Carey v. General Electric Co., 315 F.2d 499, 507 (2d Cir.1963), cert. denied, 377 U.S. 908, 84 S.Ct. 1162, 12 L.Ed.2d 179 (1964) (decision to require arbitration did not allow the arbitrator to "establish wage rates or job classifications where none existed before"). Although we directed the arbitration of a dispute over the "time-values" of certain jobs in International Union of Electrical, Radio and Machine Workers v. Westinghouse Electric Corp., 268 F.2d 352, 355 (3d Cir.1959), we expressly pointed out that, "the arbitrator would neither be establishing new time values or modifying the present ones." Thus, the type of arbitration which the Union seeks here is specifically ruled out by the cases cited by it.
 
 
 13
 The Union relies heavily on E.M. Diagnostic Systems, Inc. v. Local 169, International Brotherhood of Teamsters, 812 F.2d 91, 95 (3d Cir.1987), where we stated that, "a claimed contract violation comes within the scope of an arbitration clause of this character when the subject matter of the grievance is one that is within the zone of interests that have received protection in the collective bargaining agreement." (emphasis added). The Union here claims that its grievance on wages is clearly within the "zone of interests" protected by the wage provisions of the existing contract. This argument overlooks the fact that in this case, unlike in E.M. Diagnostic, the grievance is not one of "a claimed contract violation"; instead the Union seeks to have the arbitrator create new terms for the parties.
 
 
 14
 Finally, the Union argues that a holding that this present dispute is not arbitrable would leave it remediless because if it were to strike over this issue, the Company arguably would be entitled to seek an injunction under Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970). We do not reach that issue because it is not before us. We decide only that the district court did not err in holding that the arbitration clause did not authorize arbitration to establish wage rates and job classifications for work that were not set forth in the contract.[2]III.
 
 
 15
 For the reasons set forth, we will affirm the district court's granting of summary judgment in favor of the Company.
 
 
 
 *
 Hon. Dickinson R. Debevoise, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 One clause of the arbitration agreement also provides for arbitration of any "grievance or dispute [that] remain[s] unsettled after exhausting ... the grievance procedure." App. at 51. We do not read this provision as converting what is plainly a "rights" arbitration provision into one providing for "interest" arbitration
 
 
 [2]
 The Union also argues that the district court erred in failing to comply with Rule 56(c) of the Federal Rules of Civil Procedure because the Union had no opportunity to file opposing affidavits, briefs, or appear at a hearing. However, the Union does not ask us to remand the case to the district court and concedes that doing so would be "wasteful" because there is no dispute as to the material facts, to which the parties stipulated. Appellant's Brief at 9. Under these circumstances, we do not consider the procedure utilized