

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-30-1994

# Troy Chem. Corp. v. Teamsters Un., Local 408

Precedential or Non-Precedential:

Docket 93-5638

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"Troy Chem. Corp. v. Teamsters Un., Local 408" (1994). *1994 Decisions.* Paper 145.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/145

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS

FOR THE THIRD CIRCUIT

_____

NO. 93-5638
_____

TROY CHEMICAL CORPORATION,

                                          Appellant

v.

TEAMSTERS UNION LOCAL NO. 408

                                          Appellee

_____

Appeal from the United States District Court
for the District of New Jersey
D.C. No. 93-cv-02244
_____

Argued June 7, 1994
Before: MANSMANN, ALITO, and ROSENN, Circuit Judges
Opinion Filed  September 30, 1994
_____

HARRY N. TURK, ESQUIRE (Argued)
Epstein, Becker & Green
250 Park Avenue
New York, New York  10177
  Attorneys for Appellant

KENNETH I. NOWAK, ESQUIRE (Argued)
Zazzali, Zazzali, Fagella & Nowak
One Riverfront Plaza
Newark, New Jersey  07102

_____

OPINION OF THE COURT

ROSENN, Circuit Judge.

        This appeal presents an interesting question concerning
the authority of a federal district court to preliminarily decide

procedural issues as well as the arbitrability of a labor grievance where the union party seeks arbitration. Troy Chemical Corporation (Troy Chemical) and the Teamsters Union Local No. 408 (the Union) are parties to a collective bargaining agreement (CBA). On April 23, 1991, Troy Chemical discharged four employees for theft of company property and immediately notified the union shop steward of the discharges. No grievances were filed by the Union or the individuals pursuant to the CBA.

On January 28, 1993, the Union notified the New Jersey State Board of Mediation that a dispute existed over the discharge of one of the four employees, and requested that an arbitrator be selected. On May 14, 1993, the mediation board advised the parties that an arbitrator had been selected and a hearing was scheduled for October 20, 1993. On May 24, 1993, Troy Chemical commenced an action in the United States District Court for the District of New Jersey seeking a declaratory judgment that any disputes over the discharged four employees were not arbitrable because the Union had not complied with the grievance procedure.[1]

The parties filed cross-motions for summary judgment. The district court denied Troy Chemical's motion and granted the Union's motion for summary judgment, holding that the parties had modified by past practice the CBA provision pertaining to the

---

[1]. The district court exercised subject matter jurisdiction pursuant to section 3 of the Labor Management Relations Act, 29 U.S.C. § 185. We have jurisdiction over this appeal from a final order under 28 U.S.C. § 1291.

grievance procedure for discharges and that the grievances regarding the four employees were arbitrable.  Troy Chemical appealed.  We reverse.

I.

The Union represents production and maintenance employees of Troy Chemical's Newark, New Jersey specialty chemicals manufacturing facility.  Article 11 of the CBA[2]

_____

[2]. The pertinent provisions of the Article 11 are:

> A.  Should any difference, grievance, dispute or complaint between the Company and the Union or any employees arise out of the interpretation or application of the Agreement, there shall be an earnest effort on the part of both parties to settle same promptly and through the steps hereinafter set forth, it being understood and agreed that no grievance shall be accepted for consideration unless reduced to writing and presented in the first step within two (2) working days of the occurrence of the incident causing the grievance.  This shall not, however, apply to grievances involving payroll calculation.
>
> * * *
>
> The dispute referred to herein shall include, but shall not be limited to disputes concerning the discharge of an employee . . . .
>
> * * *
>
> C.  Except as expressly provided otherwise in this Agreement, with respect to any dispute which is required to be submitted to arbitration pursuant to the Agreement, including strikes, stoppages, lockouts and any and all claims, demands and acts arising therefrom which are subject to arbitration, the procedure established in this Agreement

provides that no grievance shall be accepted for consideration unless reduced to writing and presented within two working days of the occurrence of the incident causing the grievance. The only exception to this requirement is grievances involving payroll calculations. Step two of the grievance procedure requires a conference between representatives of Troy Chemical and the Union within three days of the incident giving rise to the grievance. If there is no settlement of the dispute after the completion of these two steps, then the matter may be submitted to arbitration. Paragraph A of article 11 states, "[t]he dispute referred to herein shall include, but shall not be limited to disputes concerning the discharge of an employee." Paragraph C of article 11 provides that, "the procedure established in this Agreement for the adjustment of said dispute shall be the exclusive means for its determination." Article 11 has remained unchanged in the more than 15 years of successive three year collective bargaining agreements between the parties.

The district court acknowledged that express contract language made it "abundantly clear that a written grievance is to be submitted . . . for all disputes concerning discharged employees." Nevertheless, the court found that the parties had historically acquiesced in the waiving of the grievance procedure in connection with discharges. Relying on New Jersey law, the court held that the parties had modified the CBA by their

(..continued)
          for the adjustment of said dispute shall be
          the exclusive means for its determination.

practice of ignoring steps 1 and 2 of the grievance procedure in connection with discharges, and therefore, the grievances regarding the four employees were arbitrable. In his opinion, the arbitrator repeatedly noted that he was bound by the district court's legal and factual conclusions that the grievance was procedurally and substantively arbitrable.

On appeal, Troy Chemical contends that the district court erred in ruling on matters of procedural arbitrability and in holding that parties had modified the express terms of the CBA by disregarding the grievance procedure provisions pertaining to employee discharge. The Union takes the position that the district court correctly found a waiver of the grievance procedure steps based on the past practices of the parties.

## II.

This court exercises plenary review over a grant of summary judgment, and we apply the same test the district court should have utilized initially. Oritani Sav. and Loan Ass'n v. Fidelity and Deposit Co., 989 F.2d 635, 637 (3d Cir. 1993). Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-32 (1986); Fed.R.Civ.P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. Oritani, 989 F.2d at

638.  We therefore conclude that the appropriate standard of review is plenary, rather than clearly erroneous, as suggested by the Union.

The law governing the proper forum for determining various issues of arbitrability is set forth by the United States Supreme Court in John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543 (1964).  In that case, a dispute arose between the employer and the union over whether the contract covered the merged employees of the successor company, and whether the union's failure to follow the grievance procedure foreclosed arbitration.  The Court stated that the first issue was a matter of substantive arbitrability to be decided by the court, but that the issue of whether the failure to adhere to the grievance mechanism barred arbitration was a procedural question for the arbitrator.  The Court explained:

> It would be a curious rule which required that intertwined issues of "substance and procedure" growing out of the same facts had to be carved up between two different forums, one deciding after the other.  Neither logic nor considerations of policy compel such a result.

Id. at 557.  The Court concluded:

> Once it is determined, as we have, that the parties are obligated to submit the subject matter of a dispute to arbitration, "procedural" questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator.

Id.

Several years later, the Supreme Court reiterated its view that procedural arbitrability should be resolved by arbitrators, not the courts. In International Union of Operating Engineers v. Flair Builders, Inc., 406 U.S. 487 (1972), the company opposed arbitration on the grounds that the union's long delay in filing for arbitration constituted laches. The court of appeals upheld the district court's ruling that the issue of whether laches existed was one to be decided by the court, not the arbitrator. The Supreme Court disagreed, observing that the contract between the parties stated that the grievance and arbitration procedure should be applied to "any difference" that arose between the parties, and the question whether the arbitration was barred by laches was "a difference" to be decided by the arbitrator. 406 U.S. at 491. Relying on Wiley, the Court emphasized that a court should determine in the first instance whether the parties had in fact agreed to arbitrate the subject matter, "[b]ut once a court finds, as here, the parties are subject to an agreement to arbitrate, and that agreement extends to 'any difference' between them, then a claim that particular grievances are barred by laches is an arbitrable question under the agreement." Id. at 491-92.

In the present action, article 11 of the CBA speaks of "any difference, grievance, dispute or complaint" and unambiguously states that "disputes concerning the discharge of an employee" are subject to the grievance procedure and arbitration. Thus, whether the Union and Troy Chemical had by practice waived steps 1 and 2 of the grievance procedure was a

question of procedure for the arbitrator and not the court.  See Association of Flight Attendants, AFL-CIO v. USAir, Inc., 960 F.2d 345, 349 (3d Cir. 1992) (holding that once the court determines that the underlying grievance is covered by the arbitration clause, the court's role ends; "[b]eyond this, the court usurps the exclusive function of the arbitrator when it ventures to decide procedural matters, or the merits of a grievance arising under the collective bargaining agreement").

It is only on appeal that the Union argues that the district court properly considered whether the parties waived the grievance procedure steps based on their past practices.  In its answer to the complaint for declaratory judgment, the Union averred as an affirmative defense that the plaintiff has not challenged the substantive arbitrability of the dispute, but raises only questions of procedural arbitrability, which are for the arbitrator not the court to decide.  Moreover, before the district court, the Union argued that under well-settled principles of labor law the issues of arbitrability and waiver are committed to the arbitrator.  The Union stated in its brief, "[t]he Union does not ask this Court to decide these questions. On the contrary, it is not this Court's function to do so. Rather, these issues are proper subjects for the arbitrator in determining whether the grievance is barred by procedural defects."

Therefore, once the district court found that the discharges were subject to arbitration, the court should have denied the declaratory judgment and held that the issue of

whether the grievances were barred by procedural defects was arbitrable.  The district court erred in deciding the procedural questions and foreclosing that issue from the arbitrator's decision.

### III.

Finally, the district court erred in granting the Union's motion for summary judgment because the record shows that there are disputed questions of fact.  For example, the Union lists the names of employees who previously arbitrated without following the grievance procedure provisions, but it does not give any specific dates or the names of the arbitrators, and all of the cases alleged to have waived the grievance procedure were written before the last CBA was entered into in 1989. In light of the vagueness of the Union's evidence and the subsequent renewal of the grievance procedure provisions in the CBA now before us for construction, there is a question as to whether the Union's evidence is credible.

Additionally, the Union avers by affidavit that discharges were treated differently because the contract language in article 11 treats the discharge as a unique part of grievance with special rights, and that Union representatives met with Alexander Gerardo, Troy Chemical's Vice President of Human Resources, and that he advised them to wait to submit this matter to arbitration because he expected a quick investigation of the arrests by the law enforcement people.[3]  Yet, the Union fails to

_____

[3].  The Union further avers that as a practical matter, Troy Chemical knows what the grievance is in discharge cases, i.e.,

point to any such language that gives discharge cases any special rights or shows that they are treated differently. In fact, the grievance forms provided by the Union to its members specifically cautioned that all complaints or grievances must be in writing, properly signed by the members and shop steward. "Unless completed in detail, the grievance will not be acted upon." Moreover, Gerardo, by his affidavit, denies having met with Union representatives and denies that he discussed the issue of the timeliness of the filing or instructed the Union to delay in pursuing this matter at any step in the required procedures. Gerardo further avers that Troy Chemical did not enter into any understandings or agreements which relieved the Union from their obligation in the grievance procedure. Troy Chemical, as the non-moving party, was entitled to all reasonable inferences. Upon remand, these factual disputes are matters that should be resolved by the arbitrator.

IV.

The district court exceeded its authority in determining whether the grievance procedure had been complied with and whether there had been a modification of article 11. Once the court decided that the discharges were subject to arbitration, it should have held that the dispute was arbitrable and that matters relating to compliance with the grievance

(..continued)
the Union is aggrieving the discharge of particular persons. However, the purpose of the grievance procedure is not merely to give notice, but rather it is to give the parties the opportunity to confer, ascertain the facts, and promptly settle the matter in the workshop, if that is at all possible.

procedure or a waiver were matters for the arbitrator.

Accordingly, the judgment of the district court will be vacated and the case remanded to the district court with instructions to return the case to the arbitrator for de novo consideration.  Costs taxed against the appellee.