

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-17-1995

# Whittle v Local 641

Precedential or Non-Precedential:

Docket 94-5334

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"Whittle v Local 641" (1995). *1995 Decisions.* Paper 100.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/100

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 94-5334


MICHAEL J. WHITTLE; JAMES CALANDRILLO,
Appellants

V.

LOCAL 641, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA,
AFL-CIO; YELLOW FREIGHT SYSTEM, INC.


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Civil No. 91-04235)


Argued January 12, 1995

Before:  COWEN, NYGAARD and ALITO, Circuit Judges

(Opinion Filed  April 17, 1995)

JOHN A. CRANER, ESQUIRE (Argued)
Craner, Nelson, Satkin & Scheer
320 Park Avenue
P.O. Box 367
Scotch Plains, NJ 07076
Attorney for Appellants

GARY A. CARLSON, ESQUIRE (Argued)
ALBERT G. KROLL, ESQUIRE
Kroll & Gaechter
25 Pompton Avenue
Suite 309
Verona, NJ 07044
Attorney for Appellee Local 641

JEFFREY I. PASEK, ESQUIRE (Argued)
Cohen, Shapiro, Polisher, Shiekman & Cohen
12 South 12th Street
2200 PSFS Building
Philadelphia, PA 19107
Attorney for Appellee Yellow Freight

NYGAARD, Circuit Judge.

Plaintiffs Michael J. Whittle and James Calandrillo appeal from the summary judgment granted to the defendants in this action under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185. The district court held that plaintiff-appellants' hybrid duty of fair representation claim was time-barred. We will reverse.

I.

This case involves a seniority dispute brought about when defendant Yellow Freight System, Inc. began to reorganize its New Jersey terminal operations. Appellants were originally hired to work in Yellow's Carlstadt terminal, where they were represented by Teamsters Local 641. Later, Yellow opened its Little Falls terminal, staffing it with employees from Carlstadt and another terminal in Rockaway. Positions at Little Falls were filled in accordance with the change of operations procedure contained in the National Master Freight Agreement, which provides for staffing new terminals on the basis of seniority.

Appellants wished to follow the work and transfer to the Little Falls terminal, believing that their employment opportunities would be greater at the new facility. Unfortunately, they did not have sufficient seniority to bid for jobs at Little Falls. They approached the union's business agent, John Barnes, requesting that he help arrange a transfer. Barnes discussed the matter with company representative Jack Hall, who initially expressed reservations about allowing appellants to transfer, believing that it might eventually lead

to a seniority dispute.  Nevertheless, Yellow did allow appellants to transfer to Little Falls, on condition that they execute an agreement, under which the appellants would retain their company seniority for noncompetitive benefits such as health insurance and the pension plan but would be assigned a new terminal seniority date for the allocation of all benefits for which workers compete, such as assignment of work.

This arrangement apparently worked satisfactorily until Yellow opened another terminal in Pine Brook, New Jersey and closed its Little Falls facility.  Yellow planned to staff the Pine Brook terminal with employees from Little Falls and Rockaway, and this evidently made appellants apprehensive about their seniority vis-a-vis the Rockaway employees.  They met with Barnes and inquired whether their full seniority would be restored after the move to Pine Brook.  Barnes offered no comfort, however, taking the position that the agreement appellants signed in 1988 worked a permanent forfeiture of their Carlstadt seniority.

Although appellants knew that employees from Rockaway with less company seniority had been placed higher on the Pine Brook competitive seniority list [app. 122],[1] they waited until December 7, 1990 before grieving [app. 141].  Barnes then brought

_____

    1Appellants assert on appeal that they noticed for the first time in December 1990 that the Rockaway employees had greater competitive seniority.  They have provided no citation to the record to support their assertion, hence we will disregard it.

the matter to arbitration.  On March 26, 1991, the Joint Local Committee of North Jersey held a hearing, at which Barnes merely explained to the Committee "exactly how everything happened" regarding the seniority and transfers.  Appellants were present at the hearing, but did not dispute or add to anything Barnes said.  Although the grievance was not filed until eleven months after appellants' January 2, 1990 transfer to Pine Brook, Yellow never asserted at the hearing that the grievance was untimely.  The Committee ruled against appellants the day of the hearing, mailing a written confirmation on May 2, 1991.

On September 25, 1991, appellants filed this hybrid suit under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185.  They alleged that Yellow's action with respect to their seniority violated the collective bargaining agreement and that Local 641's failure to prosecute their cause vigorously before the Joint Local Committee breached the union's duty of fair representation.

The district court granted summary judgment to appellees, holding that appellants' suit was time-barred.  After concluding that their cause of action accrued on January 2, 1990, it reasoned that appellants' failure to file either a grievance or a legal action within six months of that date made their federal suit untimely.  Relying on Benson v. General Motors Corp., 716 F.2d 862 (11th Cir. 1983), the court held that the

limitations period begins to run when the employee knew or should have known of the loss of seniority.  We disagree.


                              II.

        For limitation of actions, a cause accrues when it is sufficiently ripe that one can maintain suit on it.  Skyberg v. United Food & Commercial Workers Int'l Union, 5 F.3d 297, 301 (8th Cir. 1993) (quoting Santos v. District Council of United Bhd. of Carpenters, 619 F.2d 963, 968-69 (2d Cir. 1980)); City of Philadelphia v. Lead Indus. Ass'n, 994 F.2d 112, 121 (3d Cir. 1993); Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 163 (2d Cir. 1989).  Accordingly, the six-month limitations period for this action could have run only if appellants were entitled to file their suit on January 2, 1990.

        The Benson plaintiffs agreed to cede their existing seniority in exchange for "preferential consideration" at another General Motors plant.  They transferred to the other facility, but received no preferential treatment and were soon laid off. They then filed a hybrid suit against their employer and their union.  Because the collective bargaining agreement required that seniority lists be posted, the Eleventh Circuit Court of Appeals held that the limitations period started to run as soon as the list was posted and the employees knew they had lost seniority. 716 F.2d at 864.  Significantly, however, the seniority dispute

in Benson was neither grieved nor arbitrated, because both parties took the position that the matter was not arbitrable. See Benson v. General Motors Corp., 539 F. Supp. 55, 56 (N.D. Ala. 1981), vacated, 716 F.2d 862 (11th Cir. 1983).

When a grievance procedure does apply, the employee-plaintiff is required to at least attempt to exhaust his or her remedies under that procedure before a § 301 suit can be filed against the employer. DelCostello v. International Bhd. of Teamsters, 462 U.S. 151, 163, 103 S. Ct. 2281, 2290 (1983); Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S. Ct. 614, 616 (1965). Here, the union did not arbitrarily refuse to press appellants' grievance, but pursued it to arbitration, which the employees lost. Hence, there was no way for the employees to know whether they suffered any loss from the union's alleged breach until the arbitration decision was issued. It is possible that appellants could have won the arbitration, even if the union's zeal fell below the horizon of fair representation owed appellants. See Lucas v. Mountain States Tel. & Tel., 909 F.2d 419, 421 (10th Cir. 1990) (per curiam); Ghartey, 869 F.2d at 163. Here, appellants' claim accrued when the adverse arbitration decision was reached. See Childs v. Pennsylvania Fed'n Bhd. of Maintenance of Way Employees, 831 F.2d 429, 436 (3d Cir. 1987) (Railway Labor Act); Hayes v. Reynolds Metals Co., 769 F.2d 1520, 1522-23 & n.3 (11th Cir. 1985); cf. Vadino v. A. Valey Eng'rs, 903 F.2d 253, 261 (3d Cir. 1990) ("Allowing the section 301 claim

to be tolled until the unfair representation claim also accrues is consistent with the congressional goal of resolving labor disputes in the first instance through the collectively bargained grievance procedure. . . .").

In Hayes, bargaining unit employees voted to combine two job classifications and, as a result, plaintiff was laid off. He pursued his grievance through the preliminary stages of the grievance procedure, then later requested the union to take the matter to arbitration. Three months after his layoff, the union voted not to arbitrate plaintiff's grievance. 769 F.2d at 1521. The district court held that appellant's § 301 suit accrued either "when the merger of the seniority rosters became effective and certainly no later than plaintiff's termination[,]" noting that the seniority lists had been posted on or before his layoff. Id. at 1522. The Court of Appeals reversed, holding that the limitations period began to run on the day the union notified plaintiff it would not arbitrate. Id. The court distinguished its earlier decision in Benson by pointing out that in Benson there was no applicable grievance procedure. Id. at 1523 n.3.

We conclude that appellants' cause of action accrued no earlier than March 26, 1991, the date of the adverse arbitration decision. Because their complaint was filed on September 25, 1991, it was timely.

That brings us to the effect appellants' delay in filing the grievance should have on timeliness. Initially, we

note that there is some question which contractual limitation period applies to grievances challenging seniority lists. Article 5, section 4 of the National Master Freight Agreement contains a thirty-day limitation, while article 44, section 2 contains only a ten-day limitation. We will assume, without deciding, that the ten-day period applied.

The parties here arbitrated their dispute on the merits, and neither raised the issue of timeliness before the arbitrator. Timeliness, of course, is a procedural issue, and in an arbitration proceeding procedural issues are for the arbitrator to decide. See John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S. Ct. 909, 918 (1964); Troy Chem. Corp. v. Teamsters Union Local No. 408, 37 F.3d 123, 126-27 (3d Cir. 1994) (applying Association of Flight Attendants v. USAir, Inc., 960 F.2d 345, 349 (3d Cir. 1992)). Neither party cites, nor have we found a case specifically dealing with objections based on timeliness. Nonetheless, failing to raise a defense before the arbitrator generally results in a waiver of the defense, the rationale being that it would be unfair to allow a party to take a case through arbitration, then repudiate the award based on defenses not raised in that forum. See Teamsters Local Union No. 764 v. J.H. Merritt & Co., 770 F.2d 40, 42-43 (3d Cir. 1985); United Steelworkers Local 1913 v. Union R.R. Co., 648 F.2d 905, 913 (3d Cir. 1981); Amalgamated Meat Cutters Local 195 v. Cross Bros. Meat Packers, Inc., 518 F.2d 1113, 1121 n.19 (3d Cir.

1975); Lodge No. 75, Int'l Ass'n of Machinists v. Mooney Aircraft Inc., 410 F.2d 681, 683 (5th Cir. 1969).

In Mooney, for example, the collective bargaining agreement required the arbitrator to reach a decision within three days of a grievance hearing. Notwithstanding that, the arbitrator handed down its decision forty-four days after a hearing and, the losing party filed a § 301 suit. The Fifth Circuit Court of Appeals held that, by not objecting to the delay immediately after the three-day period, the losing party waived the issue. Likewise, if the appellees in this case believed that appellants' grievance was untimely, it was incumbent upon them to object in the arbitration, rather than arguing it now. In sum, the employees' failure to file a timely grievance has no bearing on the timeliness of their § 301 suit.

### III.

Because the district court erred when it found appellants' suit to be time-barred, we will reverse its judgment and remand the cause for proceedings on the merits.