**GRAPHIC COMMUNICATIONS INTERNATIONAL UNION, LOCAL 735–S, Appellant,**

v.

**NORTH AMERICAN DIRECTORY CORPORATION II.**

No. 96–7089.

United States Court of Appeals, Third Circuit.

Argued Aug. 6, 1996.

Decided Oct. 17, 1996.

Ira H. Weinstock, Jason M. Weinstock (argued), Ira H. Weinstock, P.C., Harrisburg, PA, for Appellant.

Steven R. Semler (argued), Semler & Pritzker, Washington, DC, for Appellee.

Before: MANSMANN, SCIRICA and WEIS, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

Today we determine if the normally favored "presumption of arbitrability," in section 301 labor relation cases, has been overcome by language in a collective bargaining agreement circumscribing the jurisdiction of a dispute resolution body. Here the union filed a grievance before the Peer Review Panel over the extent of health insurance benefits.

Because we find that the union, in essence, seeks to have the Peer Review Panel effectuate a change in benefits, a matter expressly reserved from its jurisdiction in the collective bargaining agreement, we will affirm the judgment of the district court entered in favor of the company.

### I.

North American Directory Corporation II, ("NADCO"), produces telephone directories. At the time of this litigation, its Hazelton, Pennsylvania, plant employed approximately 200 production and maintenance employees who were represented by Local 735–S of the Graphic Communications International Union.

NADCO and the union entered into a collective bargaining agreement effective December 1, 1992 to November 30, 1995, During the negotiation period, the concept of "peer review" was introduced by NADCO as an alternative to the traditional arbitration system. Under this peer review system, employee grievances are brought before a 5-person panel dominated by non-managerial members (3 employees/2 management). Despite some initial skepticism, the union agreed to accept the Peer Review Panel as the decision maker in certain workplace situations.

The description of the Peer Review Panel process at NADCO is found in Article 26 of the parties' collective bargaining agreement. The procedure for the filing of grievances, abbreviated for our purposes, is as follows:

Article 26.1 A grievance is defined and restricted to an allegation that the employer has violated a specific provision of the collective bargaining agreement. A grievance as defined herein, shall be processed as follows:

STEP 1: A grievance shall be brought to the attention of the grievant's supervisor within five (5) working days of the act or omission being grieved.... The supervisor must answer the grievance within three (3) working days of the presentation.

STEP 2: If agreement is not reached at the Step 1 discussion, the grievant shall have three (3) working days thereafter in which to file a written grievance with his/her department head (or designated Company representative).... The department head (or designated Company representative) must answer the grievance in writing within five (5) working days of its presentation or any meeting.

STEP 3: If the grievance is not settled at Step 2, the grievant shall have three (3) working days from receipt of the Step 2 answer in which to appeal the Step 2 decision in writing, by submitting the grievance to 1) a Peer Review Panel, or 2) the Plant Manager (Senior Management),

whose decision(s) will be final and binding on the grievant, management and the Union.... The Peer Review Panel or Plant Manager shall have five (5) working days after meeting in which to answer the grievance in writing.

\* \* \*

The Panel will not have the authority to render a decision which will add to, subtract from, or change the meaning of specific provisions of the contract; nor shall the Panel have any authority to change Company or plant policy, pay rates, benefits, work rules or to determine future contract terms.

Details of the peer review procedure were finalized by a joint committee of union members and NADCO management and were incorporated into the collective bargaining agreement. The addendum reads in relevant part:

INTRODUCTION:

The company and the union recognize that from time to time an associate may encounter a problem, question or complaint that, if left unresolved, could affect job satisfaction and work performance....

\* \* \*

[W]hen an associate is faced with a situation that has not been satisfactorily resolved by traditional means, the PEER REVIEW procedure may be used. Peer Review is a formal problem solving system designed to ensure that each associate's concerns are given careful consideration and conflicts are resolved quickly and fairly.

SCOPE OF AUTHORITY:

A Peer Review Panel will hear grievances that have not been resolved at an earlier step of the Grievance Procedure. In other words, peer panels may review management's actions to ensure that the application of the contract was followed correctly and fairly. *If they find otherwise, they have the authority to rectify the situation*

*consistent with contract provisions, company practices and/or policies.*
(Emphasis added.)

The Peer Review Panel can *not* change contract provisions, company policy, work rules, wage scales, or benefits. When a promotion is grieved, the panel can determine whether or not the job was filled in accordance with Article 16.0 of the contract. If the Peer Review panel decides it was not done properly, the panel can require the process be re-done in accordance with the contract.

(Emphasis in original.) The addendum further delineates the selection process for the members of the panel and describes the format of its meetings.

The mechanics of the grievance procedure were invoked when a dispute arose under the provision of the collective bargaining agreement which obligates NADCO to provide health insurance coverage. Article 17.1 succinctly states: "NADCO will provide Health Insurance benefits, including dental, as described 12/22/92, subject to employee co-pay of 10% of prevailing premium rate." No further written elucidation of the benefits exists and the parties join issue over the particulars of the agreed-upon coverage.

The parties do agree, however, that the insurance coverage changed under the new agreement. Facts not in dispute are that, effective February 1, 1993, NADCO increased its payment of existing premiums from 85% to 90% and that the annual major medical deductible payments were increased from $100 to $200 per individual and from $200 to $400 per family. There is no such mutual understanding, however, concerning other changes to the package. Particularly, the union disputes its acceptance of the portion of the insurance program which includes a deductible and an employee across-the-board 20% co-pay of the first $2,000 in covered medical bills. Previously, with the exception of major medical costs, employees had been afforded first dollar coverage (no deductible and no co-pay) for these expenses.[1]

---

1. The merits question regarding the particulars of the health care package is not before us. When "deciding whether the parties have agreed

to submit a particular grievance to arbitration, *a court is not to rule on the potential merits of the underlying claims." Luden's Inc. v. Local Union*

Union members began complaining to their supervisors regarding reduced coverages and voiced their concerns that these changes were not bargained for in the new agreement. Their objections culminated in August 1993 by a written filing of a Step 2 grievance. The union expressed its complaint as follows:

> The health plan currently in effect at NADCO is not the plan we agreed to implement in negotiations which took place on 12/22/92. Our understanding was the plan we had was to remain the same except that the deductible would change from $100.00 single/$200.00 family to $200.00 single/$400.00 family. Also the co-pay of 15% would decrease 5% to 10% co-pay. We also agreed the carrier would remain the same. (Blue Cross/Blue Shield of Northeast Pa. Wilkes–Barre) The Major Medical portion of the plan would be 80/20 of the next $2,000.00 dollars after the deductible is met. Instead we now pay 80/20 of all charges up to $2,000.00. . . . The coverage by Blue Shield has also changed. (ex. Surgical Services)

The union then requested the following relief:

> Remedy: We want the same Blue Cross/Blue Shield plan provided by NADCO to it's [sic] employees as we understood it to be on 12/22/92. This plan is the same plan the employees had prior to signing the contract with the following exceptions:
>
> 1. $200.00 single/$400.00 family
>
> 2. Co-pay at 10%
>
> This plan will be provided by Blue Cross/Blue Shield of Northeast Pa. Wilkes–Barre, Pa. Also, All employees who had to use the other plan will be reimbursed for any payment they may have made that should have been covered.

*No. 6 of the Bakery, Confectionery and Tobacco Workers' International Union of America,* 28 F.3d 347, 353 n. 8 (3d Cir.1994) (alteration in original).

2. Our jurisdiction, not at issue, is granted by 28 U.S.C. § 1291. We exercise plenary review over a district court's order granting summary judgment and apply the same test as did the district court initially. If the pleadings, depositions, an-

NADCO rejected the grievance, citing two reasons—one procedural, that the grievance was untimely filed, and one substantive, that the benefits provided are the benefits as bargained for and agreed upon. The denial further stated:

> Finally, while we expect the above explanation will amicably resolve this grievance, I want to point your attention to Step 4 of the Grievance Procedure, which, among other things, precludes the peer review mechanism from changing benefits.

By this language NADCO implicitly precluded appeal to the Step 3 level, the convocation of the Peer Review Panel.

Following this denial, the union filed a complaint in the district court under Section 301 of the Labor Management Relations Act of 1947, as amended, 29 U.S.C. § 185, to compel NADCO to accept the grievance for peer review adjudication. After discovery, both parties filed motions for summary judgment.

■ The district court granted NADCO's motion, holding that the union grievance sought to impose a change in the health insurance benefits, a matter strictly precluded from the jurisdiction of the Peer Review Panel: "The [collective bargaining agreement] limitation is expansive and unambiguous—a peer review panel cannot reach a decision that requires the Company to provide benefits different from those benefits which the Company believes it is obligated to pay under the CBA." *Graphic Communications International Union, Local 735–S v. North American Directory Corporation II,* No. 93–CV–1991, slip op. at 12 (M.D. Pa. filed Jan. 12, 1996). The union filed a timely appeal.[2]

swers to interrogatories, and admissions on file, together with the affidavits, demonstrate that there is no genuine issue as to any material fact, then the moving party is entitled to judgment as a matter of law. *Troy Chemical Corp. v. Teamsters Union Local No. 408,* 37 F.3d 123, 125–26 (3d Cir.1994); *Trap Rock Industries, Inc. v. International Union of Operating Engineers, AFL–CIO, Local 825,* 982 F.2d 884, 887 (3d Cir.1992).

## II.

The dispositive issue is whether adjudication of the union's grievance falls within the jurisdictional purview of the Peer Review Panel.[3]

■ We recognize initially that the question of whether the union's grievance is arbitrable is one for the court to decide. *AT & T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415, 1418–19, 89 L.Ed.2d 648 (1986). Second, we acknowledge the general presumption favoring arbitrability of labor matters. The Supreme Court's decisions in the *Steelworkers Trilogy*[4] firmly established these principles and *AT & T Technologies* revalidated arbitration's special status:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *Warrior & Gulf*, 363 U.S. [at] 582–83 [80 S.Ct. at 1353] .... "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Warrior & Gulf, supra*, at 584–85 [80 S.Ct. at 1354].

475 U.S. at 650, 106 S.Ct. at 1419.[5]

Finally, we refer to the Court's caution that since arbitration is a contractual matter,

---

**3.** The union presented additional arguments before the district court and on appeal concerning timeliness of the grievance and entitlement to attorney's fees.

On the timeliness question, the parties disagree as to which forum, the court or the Peer Review Panel, should decide its merits. The district court found the question's disposition unnecessary in light of its conclusion against arbitrability.

We, in turn, decline to discuss the timing of the grievance filing. Given our decision that the matter is within the district court's jurisdiction over section 301 cases, the issue must be viewed in that jurisdictional vein. Since neither the parties nor the district court have had the opportunity to visit the question in that context, and, because its resolution involves factual components, it is not within our discretion to address it today.

We do note, however, our position that the district court, and not the Peer Review Panel, should dispose of this issue. In *Troy Chemical*, we held that once the district court rendered a determination that a matter was arbitrable, then the issue of whether the claim was barred by procedural defect was also for the arbitrator to decide. 37 F.3d at 127. *See also John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 918–19, 11 L.Ed.2d 898 (1964) (illogical to have different forums decide intertwined issues arising from same facts).

We posit that the converse is true. If the district court has jurisdiction over the substance of this case, it is for that court to decide its procedural aspects.

Concerning attorney's fees, the district court made no mention of the union's request for an award. Because we will affirm the judgment in favor of NADCO, the issue is moot.

**4.** *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960).

**5.** Although NADCO prevailed before the district court, it continues to press its position that the presumption favoring arbitrability is diluted by the employee-dominated ratio of the Peer Review Panel.

We have previously rejected an argument that a "non-traditional" arbitration form, simply by virtue of its makeup, is entitled to less deference. In *Teamsters Local Union No. 30 v. Helms Express, Inc.*, 591 F.2d 211 (3d Cir.), *cert. denied*, 444 U.S. 837, 100 S.Ct. 74, 62 L.Ed.2d 48 (1979), we held that an award by a trucking industry joint union employer committee was entitled to identical deference as an award granted by a third party arbitrator. *Id.* at 216. Citing *United Mine Workers of America, District No. 2 v. Barnes & Tucker Co.*, 561 F.2d 1093, 1096 (3d Cir.1977), we referred to our previous statement on this issue:

> "It is not arbitration per se that federal policy favors, but rather final adjustment of differences by a means selected by the parties. If the parties agree that a procedure other than arbitration shall provide a conclusive resolution of their differences, federal labor policy encourages that procedure no less than arbitration. A determination made pursuant to that chosen procedure is not less enforceable in a federal court than is an arbitration award."

*Helms Express, id.* We made clear that our preference was not for a specific type of arbitrable body, but instead reflected a profoundly solicitous attitude toward the contract between the

there must be agreement to submit the dispute to arbitration before the obligation arises. *Id.* at 649, 106 S.Ct. at 1418–19, citing *John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 546–47, 84 S.Ct. 909, 912–13, 11 L.Ed.2d 898 (1964).

■ Of course, this deference is to be afforded only when the grievance at issue is properly before the arbitral body. As we noted, federal labor policy is well disposed toward congenial labor/management relations and will liberally apply contract law in favor of the existence of a collective bargaining agreement. *Luden's,* 28 F.3d at 359. Yet it is essential that the dispute falls within the purview of the arbitration clause. *Trap Rock,* 982 F.2d at 888. We thus turn immediately to the collective bargaining agreement.

The language in the collective bargaining agreement before us allows generally for access to the grievance procedure where there is an allegation that the employer has violated a provision of the agreement. Because the union's present grievance asserts that NADCO has not provided health insurance coverage in conformity with Article 17.1, the complaint facially appears amendable to the Peer Review Panel process.

We next inquire whether the parties intended, by either "express exclusion or other forceful evidence," *AT & T Technologies,* 475 U.S. at 652, 106 S.Ct. at 1420, to bar the Peer Review Panel from resolving this dispute. By the terms of the contract, the Peer Review Panel is empowered to evaluate management actions. If it determines that management has not acted in conformity with the collective bargaining agreement, the Panel is commissioned to rectify the problem in light of the contract and company practices. Ex-

clusionary language, however, confines the decisionmaking role of the panel: it "can *not* change contract provisions, company policy, work rules, wage scales, or benefits." (Emphasis in original.)

■ Here, the union's grievance presented to the panel requested a direct remedy—implementation of the medical insurance plan as the union understood it. Despite its demand, the union characterizes the grievance as requesting only an interpretation of the Article 17 description of the health care package. We note that the substance, not the phrasing, of the grievance governs its arbitrability. *Morristown Daily Record v. Graphic Communications Union, Local 8N,* 832 F.2d 31, 34 (3d Cir.1987).

■ The union then asserts that the language limiting the jurisdiction of the Panel serves to define its role as a "rights" and not an "interest" arbitrator. In interest arbitration, it is within the province of the decisionmaker to "set new terms and conditions of employment. . . ." *Lodge 802, International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL–CIO v. Pennsylvania Shipbuilding Company,* 835 F.2d 1045, 1046 (3d Cir.1987). Rights arbitrators, on the other hand, "resolve disputes involving the interpretation or application of terms and conditions of employment." *Id.* at 1047.

The asserted similarity to the rights arbitration depicted in *Lodge 802* does not exist here. In that case, there was a clear intent to establish a rights only arbitration system. While the arbitrator was authorized to adjudicate differences as to "meaning, application or interpretation of any terms and conditions of this Agreement," he was specifically de-

---

parties to present grievances to an agreed-upon dispute resolution forum.

NADCO attempts to distinguish *Helms* because, unlike the joint committee in that case, the Peer Review Panel is an employee-dominated body. To lend credence to this distinction is to assume an automatic bias on the part of the employee members of the panel. Such assumption gives rise to another—that the members will not render impartial decisions. We are unwilling to presume that the panel members will act in a manner contrary to their duties. Indeed, the NADCO Peer Review Panel, implementation of

which was championed by the management to the union, has not granted all employee grievances brought before it. App. at 46. Neither has partiality of peer review panels proven to be problematic in other settings. *See* Olson, Fred C., *How Peer Review Works at Control Data,* 84 Harv.Bus.Rev. 58 (1984) (of 11 cases, four decisions favored grievant). Were it necessary to the disposition of this appeal, we would make a threshold determination that the Panel's decisionmaking authority is entitled to the deference we accord arbitration panels.

nied the "power to alter or modify" the terms and conditions of the collective bargaining agreement. *Id.*

In the present dispute, the Peer Review Panel's authority is not couched in terms limiting its function to an interpretative one. Nor are its powers unfettered. Instead, a hybrid body has been established by the collective bargaining agreement. The Panel is authorized to review certain management actions, and, when appropriate, dictate relief. Having granted such license, however, the agreement then clearly restrains it. Paramount to this case, the Peer Review Panel cannot change benefits.

■ The union's claim that it is seeking an interpretation of the contract is belied by its request for a specific remedy calling for direct action. The present grievance can only be understood as an attempt to effectuate a change in the medical benefits provided under the collective bargaining agreement, a matter forbidden of consideration by the Peer Review Panel.[6]

We have also considered the hollow result which would necessarily follow. If the Peer Review Panel decided that the health care package actually provided by NADCO was not that bargained for on 12/22/92, a change in benefits would be mandated. The union does not, and could not, argue that any reading of its contract with NADCO permits such action be taken by the Panel. Such an outcome is not contemplated by the policy favoring arbitration or the basic integrity of the contract here.

We therefore conclude that the presumption of arbitrability has been overcome by express exclusion. A presumption, by its very definition, is an attitude dictated by probability. There is no need to presume anything here where the intent is expressly stated.

### III.

We will affirm the order of the district court awarding judgment to NADCO.

WEIS, Circuit Judge, *dissenting.*

The majority carefully explains that the dispute between the parties is limited to whether the phrase in the health benefits portion of the collective bargaining agreement "as described 12/22/92" imposes increases in deductible and co-payment provisions. The union asserts that the increases are not "as described 12/22/92," and the employer says they are. The disagreement then is straightforward and focuses on the meaning to be given the cryptic statement, "as described 12/22/92." The union contends that the dispute is an appropriate subject for a grievance, defined by the collective bargaining agreement as "an allegation that the employer has violated a specific provision of the collective bargaining agreement." According to the union, the employer's insistence that employees pay an increased deductible and co-payment for hospital and surgical expenses violates the health benefits provision in the collective bargaining agreement.

Although it disagrees with the union's version of what was "described 12/22/92," the employer sidesteps that issue and, instead, maintains that the peer review panel, as the final step of the grievance procedure, lacks the authority to resolve the issue. The employer points out that the collective bargaining agreement states: "The peer review panel can *not* change contract provisions, company policy, work rules, wage scales or benefits," and argues that the union seeks to "change" the benefits provisions.

In its brief, the employer makes it clear that, in its view, "change" refers to the benefits that have "indisputably ... been in effect

---

6. The dissent expresses a legitimate concern that a limited construction of the Peer Review Panel's jurisdiction may permit management to bypass peer review anytime it decides unilaterally to alter a provision of the collective bargaining agreement relating to "new benefit[s], wage scale[s] or work rule[s]." We do not foresee such an inequitable outcome. The complexion of this case is, in no small part, dictated by the

ambiguous language of the collective bargaining agreement "detailing" the health care benefits. For example, if the specifics of the package had been described in the agreement and NADCO did not pay benefits in accordance therewith, then the Peer Review Panel could rectify the violation without effectuating a change. It would simply order that NADCO comply with the agreement, a remedy within its jurisdiction.

for six and one [half] months before the subject grievance was filed." Appellee Brief at 21. That statement is based on the facts that the collective bargaining agreement was signed on January 9, 1993, and, on February 1, 1993, the employer began to impose the deductible and co-payment provisions. Despite grumbling by employees beginning at that time, the union did not file a formal grievance until August 16, 1993.

When it attacks the peer review panel's authority to "change" benefits, the employer focuses on those benefits in existence at the time the grievance was filed—not necessarily those due under the collective bargaining agreement. The employer's contention is that its action in putting lesser benefits into effect sets the standard, which the peer review panel may not "change."

Assuming *arguendo* that the union's position on the understanding of 12/22/92 is correct and that the increases in deductibles and co-payments were not included, it follows that using management's approach would result in denying the peer review panel the authority to remedy the employer's violation of the collective bargaining agreement. Adopting such an interpretation of the panel's authority makes the description of benefits in the collective bargaining agreement irrelevant when the employer unilaterally imposes a different health insurance program before the grievance occurs.

Indeed, had the collective bargaining agreement explicitly provided that no deductibles or co-payments would be applicable, under the employer's interpretation, the peer review panel would still lack power to alter the benefits program implemented on February 1, 1993, even though the employer acted unilaterally. In sum, according to its view, the employer may circumvent peer review simply by adopting a new benefit, wage scale or work rule despite collective bargaining provisions to the contrary.

It seems to me that the district court misapprehended the parties' positions when it stated that "the remedy sought by the Union is to *change* benefits provided by the

Company under the terms of the CBA that went into effect on December 1, 1992." Actually, the union seeks to *reinstate*, not change, the benefits it says were provided by the collective bargaining agreement.

Of course, the parties to a collective bargaining agreement are free to adopt a wide range of methods for resolving disputes over contract interpretation, including a veto power. In this case, however, the employer did not retain the nullification right it now claims.

The peer review procedure adopted by the parties provides that "peer panels may review management's actions to ensure that the application of the contract was followed correctly and fairly. If they find otherwise, they have the authority to rectify the situation consistent with contract provisions, company practices and/or policies." That section clearly sets out the provisions of the collective bargaining agreement as the basis for determining if management's action's are correct and fair.

In deciding whether a ruling of a peer review panel is a "change," therefore, the point of reference is the collective bargaining agreement—not a practice instituted by the employer after the agreement was adopted. The employer's insistence that the peer review panel cannot act in the circumstances here is simply inconsistent with the provisions of the peer review agreement.

Even if there were a conflict or ambiguity between various provisions of the peer review agreement, the Court is required to adopt an interpretation favoring the means of dispute resolution provided in the collective bargaining agreement. "An order to arbitrate the particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960).[7] *See also*

---

**7.** I agree with the majority that the peer review panel's decisionmaking authority is entitled to the same deference that we accord arbitration

panels. *See Teamsters Local Union No. 30 v. Helms Express, Inc.*, 591 F.2d 211, 216 (3d Cir. 1979).

5 Theodore Kheel, *Labor Law* § 23.07[2] (1995) (presumption of arbitrability compels arbitration even when parties do not clearly evidence a contractual intention to do so.)

The employer's proposed construction of the peer review panel's authority not only guts the dispute resolution procedure set up by the collective bargaining agreement, but is in conflict with basic tenets of labor law. When there are gaps in a contract, it is generally within the purview of the arbitrator to resolve them. *Price v. International Broth. of Teamsters*, 457 F.2d 605, 610 (3d Cir.1972). *See also United Steelworkers of America v. Lukens Steel Co.*, 969 F.2d 1468 (3d Cir.1992) (where collective bargaining agreement does not state who decides if grievance is valid, it is left to the arbitrator.).

I would reverse the judgment of the district court and remand with instructions to direct the parties to submit the dispute for resolution by a peer review panel.