

1996 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

10-17-1996

# Local Union 735-S v. N Amer Directory II

Precedential or Non-Precedential:

Docket 96-7089

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1996

Recommended Citation

"Local Union 735-S v. N Amer Directory II" (1996). *1996 Decisions.* Paper 51.
http://digitalcommons.law.villanova.edu/thirdcircuit_1996/51

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1996 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 96-7089
_____

GRAPHIC COMMUNICATIONS INTERNATIONAL
UNION, LOCAL 735-S,

Appellant

vs.

NORTH AMERICAN DIRECTORY CORPORATION II
_____

Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civ. No. 93-cv-01991)
_____

Argued
August 6, 1996
Before:  MANSMANN, SCIRICA and WEIS, Circuit Judges.

(Filed October 17, 1996)
_____

Ira H. Weinstock, Esquire
Jason M. Weinstock, Esquire (ARGUED)
Ira H. Weinstock, P.C.
800 North 2nd Street
Suite 100
Harrisburg, PA  17102

   COUNSEL FOR APPELLANT

Steven R. Semler, Esquire (ARGUED)
Semler & Pritzker
5301 Wisconsin Avenue, N.W.
Suite 610
Washington, D.C.  20015

   COUNSEL FOR APPELLEE
_____

OPINION OF THE COURT
_____

MANSMANN,  Circuit Judge.
        Today we determine if the normally favored "presumption

of arbitrability," in section 301 labor relation cases, has been overcome by language in a collective bargaining agreement circumscribing the jurisdiction of a dispute resolution body. Here the union filed a grievance before the Peer Review Panel over the extent of health insurance benefits.

Because we find that the union, in essence, seeks to have the Peer Review Panel effectuate a change in benefits, a matter expressly reserved from its jurisdiction in the collective bargaining agreement, we will affirm the judgment of the district court entered in favor of the company.

I.

North American Directory Corporation II, ("NADCO"), produces telephone directories. At the time of this litigation, its Hazelton, Pennsylvania, plant employed approximately 200 production and maintenance employees who were represented by Local 735-S of the Graphic Communications International Union.

NADCO and the union entered into a collective bargaining agreement effective December 1, 1992 to November 30, 1995. During the negotiation period, the concept of "peer review" was introduced by NADCO as an alternative to the traditional arbitration system. Under this peer review system, employee grievances are brought before a 5-person panel dominated by non-managerial members (3 employees/2 management). Despite some initial skepticism, the union agreed to accept the Peer Review Panel as the decision maker in certain workplace situations.

The description of the Peer Review Panel process at NADCO is found in Article 26 of the parties' collective bargaining agreement. The procedure for the filing of grievances, abbreviated for our purposes, is as follows:

> Article 26.1  A grievance is defined and restricted to an allegation that the employer has violated a specific provision of the collective bargaining agreement. A grievance as defined herein, shall be processed as follows:
>
> STEP 1:  A grievance shall be brought to the attention of the grievant's supervisor within five (5) working days of the act or omission being grieved . . . .  The supervisor must answer the grievance within three (3) working days of the presentation.
>
> STEP 2:  If agreement is not reached at the Step 1 discussion, the grievant shall have three (3) working days thereafter in which to file a written grievance with his/her department head (or designated Company representative) . . . .  The department head (or designated Company representative) must answer the grievance in writing within five (5) working days of its presentation or any meeting.

STEP 3: If the grievance is not settled at Step 2, the grievant shall have three (3) working days from receipt of the Step 2 answer in which to appeal the Step 2 decision in writing, by submitting the grievance to 1) a Peer Review Panel, or 2) the Plant Manager (Senior Management), whose decision(s) will be final and binding on the grievant, management and the Union. . . . The Peer Review Panel or Plant Manager shall have five (5) working days after meeting in which to answer the grievance in writing.

* * *

The Panel will not have the authority to render a decision which will add to, subtract from, or change the meaning of specific provisions of the contract; nor shall the Panel have any authority to change Company or plant policy, pay rates, benefits, work rules or to determine future contract terms.

Details of the peer review procedure were finalized by a joint committee of union members and NADCO management and were incorporated into the collective bargaining agreement. The addendum reads in relevant part:

INTRODUCTION:

The company and the union recognize that from time to time an associate may encounter a problem, question or complaint that, if left unresolved, could affect job satisfaction and work performance. . . .

* * *

[W]hen an associate is faced with a situation that has not been satisfactorily resolved by traditional means, the PEER REVIEW procedure may be used. Peer Review is a formal problem solving system designed to ensure that each associate's concerns are given careful consideration and conflicts are resolved quickly and fairly.

SCOPE OF AUTHORITY:

A Peer Review Panel will hear grievances that have not been resolved at an earlier step of the Grievance Procedure. In other words, peer panels may review management's actions to ensure that the application of the

> contract was followed correctly and fairly.
> If they find otherwise, they have the
> authority to rectify the situation consistent
> with contract provisions, company practices
> and/or policies.

(Emphasis added.)

> The Peer Review Panel can not change contract
> provisions, company policy, work rules, wage
> scales, or benefits.  When a promotion is
> grieved, the panel can determine whether or
> not the job was filled in accordance with
> Article 16.0 of the contract.  If the Peer
> Review panel decides it was not done
> properly, the panel can require the process
> be re-done in accordance with the contract.

(Emphasis in original.)  The addendum further delineates the
selection process for the members of the panel and describes the
format of its meetings.

The mechanics of the grievance procedure were invoked
when a dispute arose under the provision of the collective
bargaining agreement which obligates NADCO to provide health
insurance coverage.  Article 17.1 succinctly states:  "NADCO will
provide Health Insurance benefits, including dental, as described
12/22/92, subject to employee copay of 10% of prevailing premium
rate."  No further written elucidation of the benefits exists and
the parties join issue over the particulars of the agreed-upon
coverage.

The parties do agree, however, that the insurance
coverage changed under the new agreement.  Facts not in dispute
are that, effective February 1, 1993, NADCO increased its payment
of existing premiums from 85% to 90% and that the annual major
medical deductible payments were increased from $100 to $200 per
individual and from $200 to $400 per family.  There is no such
mutual understanding, however, concerning other changes to the
package.  Particularly, the union disputes its acceptance of the
portion of the insurance program which includes a deductible and
an employee across-the-board 20% copay of the first $2,000 in
covered medical bills.  Previously, with the exception of major
medical costs, employees had been afforded first dollar coverage
(no deductible and no copay) for these expenses.

Union members began complaining to their supervisors
regarding reduced coverages and voiced their concerns that these
changes were not bargained for in the new agreement.  Their
objections culminated in August 1993 by a written filing of a
Step 2 grievance.  The union expressed its complaint as follows:

> The health plan currently in effect at NADCO
> is not the plan we agreed to implement in
> negotiations which took place on 12/22/92.
> Our understanding was the plan we had was to
> remain the same except that the deductible
> would change from $100.00 single/$200.00

family to $200.00 single/$400.00 family.
Also the copay of 15% would decrease 5% to
10% copay.  We also agreed the carrier would
remain the same.  (Blue Cross/Blue Shield of
Northeast Pa. Wilkes-Barre)  The Major
Medical portion of the plan would be 80/20 of
the next $2,000.00 dollars after the
deductible is met.  Instead we now pay 80/20
of all charges up to $2,000.00. . . .  The
coverage by Blue Shield has also changed.
(ex. Surgical Services)

The union then requested the following relief:

Remedy:  We want the same Blue Cross/Blue Shield plan
provided by NADCO to it's [sic] employees as we
understood it to be on 12/22/92.  This plan is the same
plan the employees had prior to signing the contract
with the following exceptions:

1.    $200.00 single/$400.00 family

2.    Copay at 10%

This plan will be provided by Blue Cross/Blue
Shield of Northeast Pa. Wilkes-Barre, Pa.
Also, All employees who had to use the other
plan will be reimbursed for any payment they
may have made that should have been covered.

NADCO rejected the grievance, citing two reasons -- one
procedural, that the grievance was untimely filed, and one
substantive, that the benefits provided are the benefits as
bargained for and agreed upon.  The denial further stated:

Finally, while we expect the above
explanation will amicably resolve this
grievance, I want to point your attention to
Step 4 of the Grievance Procedure, which,
among other things, precludes the peer review
mechanism from changing benefits.

By this language NADCO implicitly precluded appeal to the Step 3
level, the convocation of the Peer Review Panel.

Following this denial, the union filed a complaint in
the district court under Section 301 of the Labor Relations
Management Act of 1947, as amended, 29 U.S.C. § 185, to compel
NADCO to accept the grievance for peer review adjudication.
After discovery, both parties filed motions for summary judgment.

The district court granted NADCO's motion, holding that
the union grievance sought to impose a change in the health
insurance benefits, a matter strictly precluded from the
jurisdiction of the Peer Review Panel:  "The [collective
bargaining agreement] limitation is expansive and unambiguous --
a peer review panel cannot reach a decision that requires the
Company to provide benefits different from those benefits which
the Company believes it is obligated to pay under the CBA."

Graphic Communications International Union, Local 735-S v. North American Directory Corporation II, No. 93-CV-1991, slip op. at 12 (M.D. Pa. filed Jan. 12, 1996). The union filed a timely appeal.

                              II.
        The dispositive issue is whether adjudication of the union's grievance falls within the jurisdictional purview of the Peer Review Panel.
        We recognize initially that the question of whether the union's grievance is arbitrable is one for the court to decide. AT&T Technologies Inc. v. Communication Workers of America, 475 U.S. 643, 649 (1986). Second, we acknowledge the general presumption favoring arbitrability of labor matters. The Supreme Court's decisions in the Steelworkers Trilogy firmly established these principles and AT&T Technologies revalidated arbitration's special status:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." Warrior & Gulf, 363 U.S. 582–83. . . . "In the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." Warrior & Gulf, supra, at 584–85.

475 U.S. at 650.
        Finally, we refer to the Court's caution that since arbitration is a contractual matter, there must be agreement to submit the dispute to arbitration before the obligation arises. Id. at 649, citing John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 546–47 (1964).
        Of course, this deference is to be afforded only when the grievance at issue is properly before the arbitral body. As we noted, federal labor policy is well disposed toward congenial labor/management relations and will liberally apply contract law in favor of the existence of a collective bargaining agreement. Ludens, 28 F.3d at 359. Yet it is essential that the dispute falls within the purview of the arbitration clause. Trap Rock, 982 F.2d at 888. We thus turn immediately to the collective bargaining agreement.
        The language in the collective bargaining agreement before us allows generally for access to the grievance procedure where there is an allegation that the employer has violated a provision of the agreement. Because the union's present grievance asserts that NADCO has not provided health insurance

coverage in conformity with Article 17.1, the complaint facially appears amendable to the Peer Review Panel process.

We next inquire whether the parties intended, by either "express exclusion or other forceful evidence," AT&T Technologies, 475 U.S. at 652, to bar the Peer Review Panel from resolving this dispute. By the terms of the contract, the Peer Review Panel is empowered to evaluate management actions. If it determines that management has not acted in conformity with the collective bargaining agreement, the Panel is commissioned to rectify the problem in light of the contract and company practices. Exclusionary language, however, confines the decisionmaking role of the panel: it "can not change contract provisions, company policy, work rules, wage scales, or benefits." (Emphasis in original.)

Here, the union's grievance presented to the panel requested a direct remedy -- implementation of the medical insurance plan as the union understood it. Despite its demand, the union characterizes the grievance as requesting only an interpretation of the Article 17 description of the health care package. We note that the substance, not the phrasing, of the grievance governs its arbitrability. Morristown Daily Record v. Graphics Communications Union, Local 8N, 832 F.2d 31, 34 (3d Cir. 1987).

The union then asserts that the language limiting the jurisdiction of the Panel serves to define its role as a "rights" and not an "interest" arbitrator. In interest arbitration, it is within the province of the decisionmaker to "set new terms and conditions of employment. . . ." Lodge 802, International Brotherhood of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, AFL-CIO v. Pennsylvania Shipping Company, 835 F.2d 1045, 1046 (3d Cir. 1987). Rights arbitrators, on the other hand, "resolve disputes involving the interpretation or application of terms and conditions of employment." Id. at 1047.

The asserted similarity to the rights arbitration depicted in Lodge 802 does not exist here. In that case, there was a clear intent to establish a rights only arbitration system. While the arbitrator was authorized to adjudicate differences as to "meaning, application or interpretation of any terms and conditions of this Agreement," he was specifically denied the "power to alter or modify" the terms and conditions of the collective bargaining agreement. Id.

In the present dispute, the Peer Review Panel's authority is not couched in terms limiting its function to an interpretative one. Nor are its powers unfettered. Instead, a hybrid body has been established by the collective bargaining agreement. The Panel is authorized to review certain management actions, and, when appropriate, dictate relief. Having granted such license, however, the agreement then clearly restrains it. Paramount to this case, the Peer Review Panel cannot change benefits.

The union's claim that it is seeking an interpretation of the contract is belied by its request for a specific remedy calling for direct action. The present grievance can only be understood as an attempt to effectuate a change in the medical

benefits provided under the collective bargaining agreement, a matter forbidden of consideration by the Peer Review Panel.

We have also considered the hollow result which would necessarily follow. If the Peer Review Panel decided that the health care package actually provided by NADCO was not that bargained for on 12/22/92, a change in benefits would be mandated. The union does not, and could not, argue that any reading of its contract with NADCO permits such action be taken by the Panel. Such an outcome is not contemplated by the policy favoring arbitration or the basic integrity of the contract here.

We therefore conclude that the presumption of arbitrability has been overcome by express exclusion. A presumption, by its very definition, is an attitude dictated by probability. There is no need to presume anything here where the intent is expressly stated.

## III.

We will affirm the order of the district court awarding judgment to NADCO.

Graphic Communications International Union, Local 735-S v. North American Director Corporation II, No. 96-7089

_____

WEIS, Circuit Judge, Dissenting.

The majority carefully explains that the dispute between the parties is limited to whether the phrase in the health benefits portion of the collective bargaining agreement "as described 12/22/92" imposes increases in deductible and co-payment provisions. The union asserts that the increases are not "as described 12/22/92," and the employer says they are. The disagreement then is straightforward and focuses on the meaning to be given the cryptic statement, "as described 12/22/92."

The union contends that the dispute is an appropriate subject for a grievance, defined by the collective bargaining agreement as "an allegation that the employer has violated a specific provision of the collective bargaining agreement." According to the union, the employer's insistence that employees pay an increased deductible and co-payment for hospital and surgical expenses violates the health benefits provision in the collective bargaining agreement.

Although it disagrees with the union's version of what was "described 12/22/92," the employer sidesteps that issue and, instead, maintains that the peer review panel, as the final step of the grievance procedure, lacks the authority to resolve the issue. The employer points out that the collective bargaining agreement states: "The peer review panel can not change contract provisions, company policy, work rules, wage scales or benefits," and argues that the union seeks to "change" the benefits provisions.

In its brief, the employer makes it clear that, in its

view, "change" refers to the benefits that have "indisputably . . . been in effect for six and one [half] months before the subject grievance was filed." Appellee Brief at 21. That statement is based on the facts that the collective bargaining agreement was signed on January 9, 1993, and, on February 1, 1993, the employer began to impose the deductible and co-payment provisions. Despite grumbling by employees beginning at that time, the union did not file a formal grievance until August 16, 1993.

When it attacks the peer review panel's authority to "change" benefits, the employer focuses on those benefits in existence at the time the grievance was filed -- not necessarily those due under the collective bargaining agreement. The employer's contention is that its action in putting lesser benefits into effect sets the standard, which the peer review panel may not "change."

Assuming arguendo that the union's position on the understanding of 12/22/92 is correct and that the increases in deductibles and co-payments were not included, it follows that using management's approach would result in denying the peer review panel the authority to remedy the employer's violation of the collective bargaining agreement. Adopting such an interpretation of the panel's authority makes the description of benefits in the collective bargaining agreement irrelevant when the employer unilaterally imposes a different health insurance program before the grievance occurs.

Indeed, had the collective bargaining agreement explicitly provided that no deductibles or co-payments would be applicable, under the employer's interpretation, the peer review panel would still lack power to alter the benefits program implemented on February 1, 1993, even though the employer acted unilaterally. In sum, according to its view, the employer may circumvent peer review simply by adopting a new benefit, wage scale or work rule despite collective bargaining provisions to the contrary.

It seems to me that the district court misapprehended the parties' positions when it stated that "the remedy sought by the Union is to change benefits provided by the Company under the terms of the CBA that went into effect on December 1, 1992." Actually, the union seeks to reinstate, not change, the benefits it says were provided by the collective bargaining agreement.

Of course, the parties to a collective bargaining agreement are free to adopt a wide range of methods for resolving disputes over contract interpretation, including a veto power. In this case, however, the employer did not retain the nullification right it now claims.

The peer review procedure adopted by the parties provides that "peer panels may review management's actions to ensure that the application of the contract was followed correctly and fairly. If they find otherwise, they have the authority to rectify the situation consistent with contract provisions, company practices and/or policies." That section clearly sets out the provisions of the collective bargaining agreement as the basis for determining if management's action's are correct and fair.

In deciding whether a ruling of a peer review panel is a "change," therefore, the point of reference is the collective bargaining agreement –– not a practice instituted by the employer after the agreement was adopted.  The employer's insistence that the peer review panel cannot act in the circumstances here is simply inconsistent with the provisions of the peer review agreement.

Even if there were a conflict or ambiguity between various provisions of the peer review agreement, the Court is required to adopt an interpretation favoring the means of dispute resolution provided in the collective bargaining agreement.  "An order to arbitrate the particular grievance should not be denied unless it can be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."  United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83 (1960).  See also 5 Theodore Kheel, Labor Law § 23.07[2] (1995) (presumption of arbitrability compels arbitration even when parties do not clearly evidence a contractual intention to do so.)

The employer's proposed construction of the peer review panel's authority not only guts the dispute resolution procedure set up by the collective bargaining agreement, but is in conflict with basic tenets of labor law.  When there are gaps in a contract, it is generally within the purview of the arbitrator to resolve them.  Price v. Internal Board of Teamsters, 457 F.2d 605, 610 (3d Cir. 1972).  See also United Steelworkers of America v. Lukens Steel Co., 969 F.2d 1468 (3d Cir. 1992) (where collective bargaining agreement does not state who decides if grievance is valid, it is left to the arbitrator.).

I would reverse the judgment of the district court and remand with instructions to direct the parties to submit the dispute for resolution by a peer review panel.