NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 09-3905
_____


FRANK MOBILIO
Appellant

v.

THE DIVISION OF LAW AND PUBLIC
SAFETY OF THE STATE OF NEW JERSEY;
THE DIVISION OF NEW JERSEY STATE POLICE;
DETECTIVE LONG; JOHN DOE 1-5; MARY DOE 1-5

_____


On Appeal from the United States District Court
For the District of New Jersey
(D.C. Civil No. 2-07-cv-03945)
District Judge:  Hon. William H. Walls

_____


Submitted Pursuant to Third Circuit LAR 34.1(a)
February 7, 2011

BEFORE:  JORDAN, GREENAWAY, JR., and
STAPLETON, *Circuit Judges*

(Opinion Filed February 9, 2011 )
_____

_____

OPINION OF THE COURT

_____

STAPLETON, *Circuit Judge:*

The District Court granted summary judgment to defendant Detective Brian Long

of the New Jersey State Police ("the Police") on plaintiff Frank Mobilio's § 1983 and

state law malicious prosecution claims.  Mobilio appeals.  We will affirm.

I.

A.

Mobilio, Albert Bosma, Raymond Eagles, a ten-year-old girl ("M.F."), and a

thirteen-year-old girl ("K.A.") attended a football game together.  The next day, K.A.

gave a sworn statement to the Police that Mobilio had sexually assaulted her at and on the

car ride home from the game.  K.A.'s stepmother also gave a sworn statement regarding

what K.A. and M.F. told her about the assault, stating that M.F. "said she saw [Mobilio]

trying to hold [K.A.'s] hand, . . . rubbing her leg[,] . . . touching [her, and] . . . making

excuses to sit near [her]."  App. at 163.  K.A.'s stepmother also gave the Police the jeans

that K.A. wore to the game, because K.A. said that Mobilio had "unzipped his pants[,]

exposed his penis[,] . . . grabbed her hand[,] and placed same on his penis," and K.A. "felt

something 'wet' on her hand . . . and wipe[d] her hand on her jeans."  *Id.* at 36.

After taking these statements, the Police asked Mobilio to come in for an interview. He did so, and the Police advised him that one of the girls alleged that he touched her inappropriately. Mobilio denied having done so. Detective Long was then assigned to the case, and he obtained sworn, taped statements from Bosma and Eagles. The District Court ably recounted the substance of these two statements:

> On tape, [the Police] read Mr. Bosma his Miranda warnings and placed him under oath. Mr. Bosma then gave the following testimony in his taped sworn statement: . . . Mr. Bosma and Mr. Eagles drove to the football stadium with [Mobilio] and the two juvenile girls. In the parking lot before the game started, [Mobilio] commented to Mr. Bosma that M.A. "had big breasts . . . she was a hot looking number and . . . he wouldn't mind doing her." Mr. Bosma observed [Mobilio] "hugging" K.A. before they had entered the stadium, and "rubbing her leg a little bit now and then . . . [on] her thigh area" during the game. On the car ride home, [Mobilio] was initially in the front right passenger seat, but after a rest-room break, [Mobilio] switched seats with Mr. Eagles and sat between the two girls in the back of the car. During the car ride, Mr. Bosma observed [Mobilio] "pulling down his pants and taking [K.A.'s] hand and rubbing it on his . . . private parts." Afterward, Mr. Bosma observed that K.A. "took her hand and rubbed it on her pants, on her upper pant leg." At that point, Mr. Bosma "imagined" that [Mobilio] had "ejaculated" and that K.A. was taking his semen and rubbing it on her pants. Mr. Bosma also observed [Mobilio's] hand to be touching K.A.'s breasts. Mr. Bosma saw [Mobilio] the night after the game, and Mr. Bosma "knew" that [Mobilio] was "guilty." Mr. Bosma stated that he was not threatened to provide the information he gave in his statement, and that no promises were made to him to give that information.

> * * *

> Mr. Eagles stated the following: . . . before entering the football stadium, Mr. Eagles saw [Mobilio] and K.A. "briefly holding hands" which Mr. Eagles thought was "kind of odd." Also in the parking lot, Mr. Eagles heard [Mobilio] comment that K.A. was "developed for her, a twelve year old." Near the beginning of the car ride home, Mr. Eagles saw [Mobilio] take a

3

towel and lay it over K.A.'s leg, which Mr. Eagles thought was "kind of peculiar."

*Mobilio v. Dep't of Law & Pub. Safety of N.J.*, No. 07-3945, 2009 U.S. Dist. LEXIS 84144, at *7-9 (D.N.J. Sept. 15, 2009).

The Police had K.A.'s jeans tested, and the police laboratory issued a report stating that no seminal material was found on the jeans. On the same day the lab report was issued, Detective Long drafted an affidavit of probable cause to obtain warrants to arrest Mobilio and search his home and car. The affidavit stated that: (1) K.A. and her stepmother reported to the Police that K.A. was "sexually assaulted . . . by a Frank Mobilio while she attended a . . . football game . . . and again while she was traveling . . . back to her residence;" (2) K.A. gave a sworn, taped statement describing the assault; (3) Bosma gave a sworn, taped statement that largely corroborated K.A.'s account; and (4) Eagles gave a sworn, taped statement "that he observed Frank Mobilio to hold K.A.'s hand outside of the stadium," that Mobilio "commented on K.A.'s breast and body," and that Mobilio "specifically indicated that she was very well built for a thirteen year old girl." App. at 208-10. Based on the affidavit, warrants were issued to arrest Mobilio and search his property, and Detective Long and six other officers did so.

About sixteen months later, Bosma and his attorney met with the Police and state prosecutor and informed them that Bosma wished to change his sworn statement. Bosma stated that "he felt pressured to provide the statement he did," and that in fact "he did not see anything inappropriate between Mr. Mobilio and [K.A.] during the football game or

4

on the car ride home." *Id.* at 247. Bosma then gave another sworn, taped statement that "his initial statement was not completely accurate" because he "felt pressured to cooperate with the criminal investigation and therefore stated that he witnessed certain acts between Mr. Mobilio and [K.A.], which in fact he did not." *Id.* at 249.

Despite being told of Bosma's recantation and the results in the lab report, a grand jury indicted Mobilio on charges of criminal sexual conduct and engaging in sexual conduct which would impair or debauch the morals of a minor. Mobilio was tried before a jury on these charges, and Bosma testified that he was "pressured in giving [his original] statement [to the Police]."[1] *Id.* at 322. Mobilio was acquitted.

---

[1] Bosma testified as follows at Mobilio's criminal trial:

Q.      [W]hen you arrived at the State Police station, they gave you your Miranda warnings. Isn't that right?

A.      Yes.

Q.      And, Detective Long was in your face, wasn't he?

A.      Yes.

Q.      And you kept saying, that's not what I saw, and he made you say what you said. Isn't that right?

A.      Yes.

* * *

Q.      Didn't [Detective Long] say that if you didn't say what -- if you didn't say what he wanted you to say, you were going to be arrested. Isn't that right?

5

B.

Thereafter, Mobilio filed the present action in the District Court for the District of New Jersey, asserting claims of malicious prosecution, pursuant to 42 U.S.C. § 1983 and under state law, against Detective Long in his individual capacity.[2] During discovery, Bosma gave deposition testimony indicating that he was not pressured into giving his original statement to the Police:

> Q. At the time you were placed under oath and gave your sworn statement, did you observe any of the officers do anything or did you hear any of the officers doing anything that you perceived to be a prompt to say things that were not true?
>
> A. Like you are asking me if they were coaxing me to make a wrong statement?
>
> Q. Yes, right.

---

> A. Yes.
>
> * * *
>
> Q. So, you were actually pressured in giving that statement, weren't you?
>
> A. Yes, I was.

App. at 321-22.

[2] Mobilio asserted additional claims against Detective Long, against the "Division of Law and Public Safety of the State of New Jersey," and against the "Division of New Jersey State Police." The District Court either dismissed or granted summary judgment on these other claims. Mobilio does not challenge those rulings in this appeal, and so we need not discuss the additional claims.

A.    No.

Q.    When I say, "anything," I mean did they move their eyes in a certain way, did they throw their shoulders; did they make hand gestures; did they lift their -- anything at all -- that was what you perceived to be a prompt on their part, a direction for you to give a false statement?

A.    Are you asking me if they did anything?

Q.    Yes.

A.    No, absolutely not.

* * *

Q.    [The detectives] did not tell you what to say, did they?

A.    No.

Q.    And they didn't prompt you as to what to say either before you were sworn in or after you were sworn in, did they?

A.    No.

* * *

Q.    Did you ever perceive . . . that they wanted you to testify in a false manner in order to aid in the arrest and conviction of Mr. Mobilio?

A.    No.

Q.    The choice to give false statements, was that yours?

A.    Yes.

App. at 283, 291-92.

In ruling on Detective Long's summary judgment motion, the District Court noted first that because the absence of probable cause is a required element of a malicious

7

prosecution claim under both § 1983 and New Jersey law, "[p]robable cause is an absolute defense." *Mobilio*, 2009 U.S. Dist. LEXIS 84144, at *22. The Court then stated the two-part test that must be satisfied by "[a] section 1983 plaintiff who challenges the validity of a search warrant by asserting that law enforcement agents submitted a false affidavit to the issuing judicial officer," *Sherwood v. Mulvihill*, 113 F.3d 396, 399 (3d Cir. 1997), stating that:

> The plaintiff must prove, by a preponderance of the evidence, "(1) that the affiant knowingly or deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant; and (2) that such statements or omissions are material, or necessary, to a finding of probable cause."

*Mobilio*, 2009 U.S. Dist. LEXIS 84144, at *23 (quoting *Sherwood*, 113 F.3d at 399).

The District Court ruled that it need not determine whether the alleged misstatements and omissions in Detective Long's affidavit were made knowingly, deliberately, or with a reckless disregard for the truth, because the "alleged misstatements and omissions . . . [were] not 'material,'" because a "reconstructed affidavit, constructed by inserting [the] alleged omissions and excising [the] alleged inaccuracies, would still establish probable cause." *Id.* at *27 (quotations and citations omitted). The District Court did state, however, albeit in *dicta*, that "a reasonable jury could not conclude . . . that Detective Long required [Bosma] to provide false information . . . or knew he was doing so," because in light of Bosma's deposition testimony, "no reasonable jury could

8

rely on the [criminal trial] testimony and find that Mr. Bosma was forced to make a false statement." *Id.* at *31-32. Mobilio appeals.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. We have jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's grant of summary judgment *de novo*. *DIRECTV Inc. v. Seijas*, 508 F.3d 123, 125 (3d Cir. 2007) (citing *CAT Internet Servs. Inc. v. Providence Washington Ins. Co.*, 333 F.3d 138, 141 (3d Cir. 2003)). We apply the same standard as the District Court in determining whether summary judgment was appropriate. *Congregation Kol Ami v. Abington Twp.*, 309 F.3d 120, 130 (3d Cir. 2002). Thus, summary judgment was proper if, viewing the record in the light most favorable to the nonmoving party and drawing all inferences in that party's favor, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Abramson v. William Paterson Coll.*, 260 F.3d 265, 276 (3d Cir. 2001); Fed. R. Civ. P. 56(c). "An issue of material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Troy Chem. Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 126 (3d Cir. 1994).

## III.

Mobilio challenges the District Court's ruling regarding the reconstruction of Detective Long's affidavit. Mobilio argues that: (1) despite Bosma's

9

deposition testimony, his criminal trial testimony shows that Detective Long forced him to make a false statement; and (2) the fact that the police lab report was issued the day the affidavit was submitted raises the inference that Detective Long received the report before he submitted the affidavit. Thus, Mobilio contends, the reconstructed affidavit would contain none of the information provided by Bosma (because Detective Long knew that information was false) and would include the results of the lab report (because Detective Long had the report before submitting the affidavit). This reconstructed affidavit, Mobilio urges, is insufficient to support a finding of probable cause as a matter of law, because it would have contained only "K.A.'s statement, contradicted by a lab report, with no witnesses of the five people in the van except K.A." Appellant's Br. at 18.

Bosma's conflicting criminal trial and deposition testimonies appear to create an issue of fact concerning whether he was intimidated into making his original statement to the Police, and so we question the District Court's statement that "no reasonable jury could rely on the [criminal trial] testimony and find that Mr. Bosma was forced to make a false statement." *Mobilio*, 2009 U.S. Dist. LEXIS 84144, at *32. In addition, the dates of the lab report and the affidavit appear to create an issue of fact regarding whether Detective Long saw the lab results before submitting the affidavit. However, these issues are immaterial,

10

because even if these facts were found in Mobilio's favor, the reconstructed affidavit, excising the information from Bosma and adding the results of the lab report, would support a finding of probable cause as a matter of law. As the District Court noted, "[t]he affidavit would still note that, in a taped sworn statement, [K.A.] provided a very detailed account of the alleged sexual assault [and] . . . clearly identified Plaintiff as the individual who assaulted her," and that K.A.'s stepmother stated that "her [step]daughter told her she was sexually assaulted by [Mobilio] . . . and . . . her stepdaughter's ten-year old friend confirmed seeing [Mobilio] touching her stepdaughter inappropriately at the football game." *Id.* at *28-29. In addition, the reconstructed affidavit would have Eagles's statement regarding Mobilio holding hands with K.A., commenting on her body, and specifically indicating that she was well built for a thirteen year old.

Accordingly, even with Bosma's statement excised and the lab report included, the foregoing "facts and circumstances within [Detective Long's] knowledge [were] sufficient in themselves to warrant a reasonable person to believe that an offense ha[d] been . . . committed by [Mobilio]," *United States v. Cruz*, 910 F.2d 1072, 1076 (3d Cir. 1990), because "[w]hen a police officer has received a reliable identification by a victim of his or her attacker, the police have probable cause to arrest." *Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir. 1997)

11

(citing *Torchinsky v. Siwinski*, 942 F.2d 257, 262 (4th Cir. 1991); *Grimm v. Churchill*, 932 F.2d 674, 675 (7th Cir. 1991)). Mobilio is correct that "[i]ndependent exculpatory evidence or substantial evidence of the witness's own unreliability that is known by the arresting officers could outweigh the identification such that probable cause would not exist," *Wilson v. Russo*, 212 F.3d 781, 790 (3d Cir. 2000), but no such circumstances are presented here. While neither Eagles nor Bosma (according to his revised statement) saw actual sexual contact between Mobilio and K.A., and the lab report indicated that no seminal material was found on K.A.'s jeans, both Eagles and M.F. saw Mobilio touch K.A. inappropriately, and there is no indication from the record that Detective Long had any reason to deem K.A. an unreliable witness. In light of the foregoing, the District Court properly concluded that the reconstructed affidavit supported a finding of probable cause as a matter of law.[3]

---

[3] Mobilio raises in the alternative a novel argument: that because Bosma's criminal trial testimony raises the inference that Detective Long forced Bosma to make a false statement, Detective Long's conduct "so permeates the case . . . that the notion of probable cause is completely defeated," and therefore "the only elements of malicious prosecution that [Mobilio] must show would be that [Detective Long] initiated a criminal proceeding, that the proceeding ended favorably to [Mobilio], that [Detective Long] acted maliciously or for a purpose other than bringing [Mobilio] to justice[,] and that [Mobilio] suffered deprivation of liberty." Appellant's Br. at 20. Mobilio cites no case, from this Court or any other, for the proposition that a defendant's conduct can relieve a plaintiff of the burden of showing lack of probable cause, one of the required elements of a malicious prosecution claim, and we are aware of no such authority. Thus, we need not address this

IV.

In light of the foregoing, we will AFFIRM the judgment of the District Court.

---

argument further.